**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| JEREMY VANDERSLUIS, Individually and on behalf of all others similarly situated, | Case No. 1:25-cv-07167-HG |
| Plaintiff, | |
| v. | |
| AGILON HEALTH, INC., STEVEN SELL, and JEFFREY SCHWANEKE, | |
| Defendants. | |

**SHAJI NELSON'S MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION OF HR & SONS LLC'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND <u>APPROVAL OF LEAD COUNSEL</u>**

Lead Plaintiff Movant Shaji Nelson ("Nelson") submits this memorandum of law in opposition to the motion of HR & Sons LLC ("HR&S") for appointment as lead plaintiff and approval of lead counsel (Dkt. No. 9). Nelson should be appointed as lead plaintiff and his selection of lead counsel should be approved because HR&S is inadequate to represent the class.

## I.    INTRODUCTION

The Private Securities Litigation Reform Act of 1995 ("PSLRA") directs courts to appoint the "most adequate plaintiff"—*i.e.*, the plaintiff "most capable of adequately representing the interests of class members"—as lead plaintiff and provides a rebuttable presumption that the most adequate plaintiff is the movant that, *inter alia*, has the "largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B). The presumption may be rebutted, however, by a showing that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). If the presumption is rebutted, the inquiry continues with the movant who has the next largest financial interest until a suitable lead plaintiff is identified.

Nelson and HR&S are the only two investors that moved for appointment as lead plaintiff. HR&S claims in its moving papers to have lost $33,146 (*see* Dkt. No. 12-3), which is larger than Nelson's loss of $7,513.96. *See* Dkt. No 13-3. However, any presumption that HR&S is the most adequate plaintiff is rebutted because HR&S is a high frequency day trader, failed to provide any meaningful information about itself, and appears to have improperly excluded transaction information from its loss analysis. Each one of these issues is sufficient, on their own, to disqualify HR&S as inadequate.

Since Nelson is the only *bona fide* movant who filed a timely motion and alleges a verifiable financial interest in this action, he is the presumptively most adequate plaintiff. Since

1

this presumption has not been rebutted, Nelson should be appointed lead plaintiff, and his selection of lead counsel should be approved.

## II.    HR&S SHOULD BE DISQUALIFIED BECAUSE IT IS A DAY TRADER AND RAPIDLY PURCHASED AND SOLD SHARES DURING THE CLASS PERIOD

Investors (like HR&S) that rapidly buy and sell shares in the absence of new news or information about the company are considered day traders or high frequency traders. Since reliance on the company's false statements is an element of any securities fraud claim, day traders and high frequency traders are subject to the unique defense that they "traded based on daily market volatility rather than reliance on defendants' alleged misrepresentations." *Rodriguez v. DraftKings Inc.*, 2021 WL 5282006, at *7 (S.D.N.Y. Nov. 12, 2021); *see also Applestein v. Medivation Inc*, 2010 WL 3749406, at *3 (N.D. Cal. Sept. 20, 2010) ("Day-traders 'typically focus[] on technical price movements rather than price,' and therefore are subject to a defense the they would have purchased the stock at issue 'regardless of the misstatement/omission.'") (citation omitted); *Tsirekidze v. Syntax-Brillian Corp.*, 2008 WL 942273, at *4 (D. Ariz. Apr. 7, 2008) ("Such a high-volume day trader might be subject to the unique defense that frantic trading belies any true reliance on company reports or even on the integrity of the stock price itself.").

Here, HR&S engaged in day trading because it bought and sold thousands of agilon shares within the same day on five separate occasions during the short class period. *See* Dkt. No. 12-3 (HR&S's Loss Chart). As illustrated in HR&S's loss chart, it ***purchased and sold***:

- 1,000 shares on April 30, 2025;

- 1,000 shares on June 23, 2025;

- 2,000 shares on June 24, 2025;

- 1,000 shares on July 17, 2025; and

- 1,000 shares on July 23, 2025.

2

*See id.* HR&S also purchased and sold large numbers of shares within days. For example, HR&S:

- Sold 1,000 shares on April 25, 2025, which were purchased one day earlier;

- Sold 2,700 shares on April 30, 2025, which were purchased in the two days prior;

- Sold 1,100 shares on June 17, 2025 that were purchased the day prior;

- Sold 2,000 shares on Monday, June 23, 2025, that were purchased the Friday prior; and

- Sold 2,000 shares on Monday, July 21, 2025, that were purchased the Friday prior.

Accordingly, HR&S is subject to the unique defense that it "traded based on daily market volatility rather than reliance on defendants' alleged misrepresentations," and should therefore be disqualified as inadequate. *DraftKings*, 2021 WL 5282006, at *7; *Galmi v. Teva Pharms. Indus. Ltd.*, 302 F. Supp. 3d 485, 504 n.10 (D. Conn. 2017) ("[G]iven his status as a potential 'day trader,' he may be subject to unique defenses that make him an inappropriate lead plaintiff.").

Moreover, to disqualify HR&S "the Court need not conclude that the defense is likely to or will succeed." *In re Hebron Tech. Co., Ltd. Sec. Litig.*, 2020 WL 5548856, at *7 (S.D.N.Y. Sept. 16, 2020) (citation omitted). Instead, only a "potential" that it is "subject to unique defenses" is necessary to disqualify it. *Id.* (citation omitted). This is because "even ultimately unsuccessful unique defenses may 'divert attention from the substance of the basic claim,' and class members are 'entitled to be represented by someone unhindered by' such distractions." *DraftKings*, 2021 WL 5282006, at *10; *see also Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 123 (S.D.N.Y. 2001) ("When a defense that is unique to a class representative threatens to dominate or even interfere with that plaintiff's ability to press the claims common to the class, then that threat must be analyzed with care."); *Landry v. Price Waterhouse Chartered Accountants*, 123 F.R.D. 474, 476 (S.D.N.Y. 1989) ("[W]hether these defenses will be successful is of no matter. . . . Each of these

3

plaintiffs would be required to devote considerable time to rebut the claim that their purchases were based not on the integrity of the market . . . . Clearly, this situation would prejudice absent class members."). Since HR&S engaged in high frequency trading and day trading, which Defendants will later wield as a unique defense, HR&S should be disqualified from consideration for appointment as lead plaintiff.

### III.    HR&S SHOULD BE DISQUALIFIED BECAUSE IT FAILED TO PROVIDE SUFFICIENT BACKGROUND INFORMATION ABOUT ITSELF

Courts routinely disqualify lead plaintiff movants (including entities) that fail to provide sufficient information about themselves regarding their adequacy. *See Gross v. AT&T Inc.*, 2019 WL 7759222, at *2 (S.D.N.Y. June 24, 2019) (disqualifying an entity movant because it "failed to provide any information, beyond the name of a director, as to its business, management, structure, or its experience with securities litigation"); *see also Perez v. HEXO Corp.*, 2020 WL 905753, at *3 (S.D.N.Y. Feb. 25, 2020) ("[G]iven [movant's] failure to provide any information regarding his experience in his preliminary motion, the Court questions whether [he] will meaningfully oversee and control the prosecution of this consolidated class action."); *Karp v. Diebold Nixdorf, Inc.*, 2019 WL 5587148, at *6 (S.D.N.Y. Oct. 30, 2019) (disqualifying movants who "provided the Court with little to go on with respect to their alleged capacity to manage this litigation").[1]

Here, the only information HR&S provided on the record about itself is that Hamid Ahmed is *one* of its owners. HR&S did not disclose, among other things:

---

[1] *See also Smajlaj v. Brocade Commc'ns Sys. Inc.*, 2006 WL 7348107, at *3 (N.D. Cal. Jan. 12, 2006) (disqualifying an entity movant where "there are too many questions surrounding [its] standing, authority, transparency, and structure that may give rise to unique defenses and are atypical of the class as a whole"); *In re Boeing Co. Aircraft Sec. Litig.*, 2019 WL 6052399, at *5 (N.D. Ill. Nov. 15, 2019) ("The complete dearth of information accompanying the Wangs' lead plaintiff motion leaves the Court with virtually no basis to assess their adequacy to lead and direct litigation . . . ."); *Piven v. Sykes Enterprises, Inc.*, 137 F. Supp. 2d 1295, 1305 (M.D. Fla. 2000) (disqualifying an entity movant where "it is not even known where Westwind is located, what its business is, if it is a foreign company, and who controls it").

- Who its other owners are;

- Whether the other owners have any control over HR&S that may conflict with Mr. Ahmed's control;

- Who actually executed the agilon transactions at issue in this action on behalf of HR&S;

- In what business HR&S engages; and

- The state law under which HR&S is organized.

Excluding this information renders it impossible for the Court to meaningfully find that HR&S is adequate because there are too many unknowns. As such, the Court should "decline[] to appoint as lead-plaintiff an entity that lacks basic transparency . . . at this juncture[,]" and disqualify HR&S. *AT&T*, 2019 WL 7759222, at *2.

## IV.     HR&S SHOULD BE DISQUALIFIED BECAUSE IT APPEARS TO HAVE IMPROPERLY EXCLUDED TRANSACTIONS FROM ITS LOSS ANALYSIS

HR&S claims in its loss chart that it executed 47 transactions between April 24, 2025 and August 4, 2025, but then executed no transactions after August 4, 2025, retaining 33,500 shares at a value of approximately $1.07 per share. HR&S's purported trading during and after the class period is incongruent, indicating that some transaction information may have been improperly excluded. If HR&S purchased or sold any shares after August 4, 2025, such transactions may decrease HR&S's claimed losses, and should be included in the analysis. As such, Nelson requests that HR&S confirm whether or not it executed trades after August 4, 2025.

If HR&S provided an inaccurate loss figure by excluding relevant transactions, that would be a sufficient reason disqualify HR&S from consideration for appointment as lead plaintiff. *See Diebold,* 2019 WL 5587148, at *6 (S.D.N.Y. Oct. 30, 2019) (holding errors in loss calculation "militate against appointment and render [them] inadequate to serve as lead plaintiff") (alteration in original, internal quotation marks and citation omitted); *Micholle v. Ophthotech Corporation*,

5

2018 WL 1307285, at *9 (S.D.N.Y. Mar. 13, 2018) (holding date and pricing errors in a movant's submission "militate against appointment and render him inadequate to serve as lead plaintiff").

**V.     NELSON SHOULD BE APPOINTED AS LEAD PLAINTIFF BECAUSE HE IS THE PRESUMPTIVELY MOST ADEQUATE PLAINTIFF AND THE PRESUMPTION HAS NOT BEEN REBUTTED**

Since HR&S should be disqualified as inadequate to represent the class, Nelson is the presumptively most adequate plaintiff. Nelson satisfies all three requirements as he filed a timely motion, is typical and adequate to represent the class, and has a large financial interest. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Moreover, the presumption that Nelson is the most adequate plaintiff has not been (and cannot be) rebutted. Nelson is adequate as he has a bachelor's degree in business administration, and approximately 5 years of investing experience. *See* Dkt. No. 11 at 8. As such, Nelson should be appointed as lead plaintiff.

**VI.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED**

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject only to the Court's approval.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). Nelson's selection of Glancy Prongay Wolke & Rotter LLP as lead counsel for the class should be approved. The firm has decades of experience successfully representing injured investors. *See* Dkt. No. 13-4 (Glancy Prongay & Wolke & Rotter firm résumé). By approving Nelson's selection of counsel, the Court will ensure that the class receives the highest caliber of legal representation. Accordingly, Nelson's selection of lead counsel for the class should be approved.

**VII.   CONCLUSION**

For the foregoing reasons, Nelson respectfully requests that the Court grant his motion and enter an Order: (1) appointing Nelson as Lead Plaintiff; (2) approving his selection of Glancy Prongay Wolke & Rotter LLP as Lead Counsel for the class; and (3) denying the competing motion of HR&S.

Respectfully submitted,

DATED: March 16, 2026

**GLANCY PRONGAY WOLKE & ROTTER LLP**

By:  /s/ Gregory B. Linkh
Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 358
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
glinkh@glancylaw.com

Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Shaji Nelson and Proposed Lead Counsel for the Class*

7

## CERTIFICATE OF COMPLIANCE

The undersigned counsel for Shaji Nelson certifies that this brief contains 1,927 words, which complies with the word limit of L.R. 7.1(c).

*/s/ Gregory B. Linkh*
Gregory B. Linkh

**PROOF OF SERVICE**

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.

On March 16, 2026, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Eastern District of New York, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on March 16, 2026, at Brooklyn, New York.

*/s/ Gregory B. Linkh*
Gregory B. Linkh